## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KENNETH JAMES DAUGHERTY,

Petitioner,

v.

Dr. DEANNA BROOKHART, Warden,
Lawrence Correctional Center,

Respondent.

Case No. 16-cv-08872

Judge Mary M. Rowland

## MEMORANDUM OPINION & ORDER

Kenneth James Daugherty ("Daugherty"), an Illinois state prisoner, filed a *pro se* petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his convictions for first degree murder, attempted murder, and armed robbery. Daugherty presents 13 claims for relief. For the following reasons, Daugherty's petition [1] [7] is denied, and no certificate of appealability shall issue.

## BACKGROUND

### I.    Factual History

#### A. Daugherty's Bench Trial

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *McCarthy v. Pollard*, 656 F.3d 478, 483; (7th Cir. 2011); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Daugherty has not provided clear and convincing evidence to rebut the presumption of correctness here, so this

1

factual background is adopted from the Illinois Court of Appeals' findings on direct appeal.

Following a bench trial, Daugherty was convicted of the first-degree murder of Larry Mimms ("Mimms"), the attempted murder of Gennie Wilson ("Wilson"), and armed robbery. [31-12], *People v. Daugherty*, 1997 IL App (1st), No. 1-95-0787 (unpublished), at 1.

At Daugherty's bench trial, the prosecution introduced evidence that proved the following. On November 20, 1993, Daugherty, William "Steve" Daugherty ("Steve"), and Wayne Tankersley ("Tankersley") arrived at the apartment shared by Mimms and Wilson. *Id.* at 2. Initially, Daugherty, Steve, Tankersley, and Mimms sat in the apartment of the living room talking and watching television, while Wilson went into her bedroom. *Id.* Sometime later, Mimms came into Wilson's bedroom to ask about acquiring cocaine. *Id.* Wilson paged a drug source but received no response. *Id.* Wilson then went to the kitchen, from where she heard a noise in the living room. *Id.* Wilson went to the living room, where she observed Daugherty and Tankersley fighting with Mimms. *Id.* Steve then approached Wilson with a handgun and forced her back into her bedroom. *Id.* In the bedroom, Steve ordered Wilson to give him money. *Id.* Wilson began looking through her purse for the $500 to $800 in cash she had to pay rent. *Id.* Steve took the purse from Wilson and ordered her back to the living room. *Id.* In the living room, Wilson observed Tankersley holding Mimms while Daugherty hit him with a closed fist. *Id.* Wilson did not recall seeing a knife or any blood. *Id.* Steve told Wilson that he was going to kill her and ordered her to get on

2

the floor. *Id.* While Wilson lay on her stomach on the floor, she saw the men continuing to fight, felt a pain in her head, and then her head felt wet. *Id.* at 2-3.

Wilson later awoke on the floor of her apartment and crawled to her bedroom to phone for help. *Id.* at 3. Wilson first called the home of a neighbor, Andrea Green ("Green"). *Id.* Green's sister answered the phone, and Wilson told her that she had been robbed and shot. *Id.* Wilson then called 911 and told the operator that she had been shot. *Id.* Wilson then crawled to the front door of the apartment and locked it so that she would not get hurt again. *Id.* The next thing Wilson remembered was people coming into the apartment; Wilson kept saying "Steve did it." *Id.*

Upon entering the apartment, officers found Wilson lying behind the door with blood coming from her head. *Id.* Officers heard Wilson ask for help, but did not try to have a conversation with her. *Id.* Officers also saw Mimms lying on his back in the middle of the living room bleeding from multiple stab wounds. *Id.* Wilson was removed from the scene by paramedics. *Id.* Detectives observed stab wounds on Mimms' stomach, chest, and back, a large pool of blood, a telephone under Mimms' head, and a spent shell located two feet from Mimms' shoulder. *Id.* Detectives also observed another small pool of blood, and a second spent shell located five or six feet from Mimms' body. *Id.* at 3-4. A forensic pathologist performed an autopsy on Mimms and identified 79 different stab wounds on Mimms' chest, abdomen, back, neck, head, and legs, and a single gunshot wound to the back of his head. *Id.* at 4.

Detectives recovered the remains of a purse and jacket which had been burned and placed in the trash at a separate location. *Id.* Police arrested Steve for Mimms'

murder. *Id.* Steve told police that it was Daugherty who had instigated the events. *Id.* According to Steve, Daugherty told him that Mimms possessed a kilogram of narcotics and Daugherty wanted to go to Mimms' apartment to straighten matters out. *Id.* Steve claimed that Daugherty and Tankersley attacked Mimms unexpectedly, that Daugherty had a handgun, and that Tankersley got a knife from the kitchen and began stabbing Mimms. *Id.* Steve admitted that he took Wilson's purse and ordered her to lie on the floor but denied shooting her. *Id.* Steve claimed that he began to leave the apartment after ordering Wilson to the floor but looked back and saw Daugherty and Tankersley shooting Mimms and Wilson. *Id.* at 4-5. Steve claimed that Tankersley disposed of his bloody clothes in a trashcan and divided the money from Wilson's purse between them. *Id.* at 5. Daugherty was later arrested in Wisconsin. *Id.*

Daugherty's bench trial included testimony from Wilson, police officers who responded to Wilson's 911 call and investigated the case, the forensic pathologist who performed the autopsy of Mimms, and the admission of Steve's statements to police. *Id.* at 5-9. His trial was severed from, but simultaneous with, Steve's jury trial and Tankersley's stipulated bench trial. *Id.* at 1. Following his conviction, Daugherty was sentenced to 75 years for the first-degree murder of Mimms and 30 years for the attempted murder of Wilson, with the sentences to run consecutively. *Id.* at 1. Daugherty received a concurrent sentence of 30 years for his armed robbery conviction. *Id.*

### B. Tankersley's Severed Stipulated Bench Trial

4

The following facts regarding Tankersley's severed bench trial are taken from the state court record of Daugherty's post-conviction proceedings. On November 23, 1993, shortly after the incident, police interviewed Tankersley. [31-47] at 81-99. In his statement, Tankersley stated that Daugherty had a gun when they went to Mimms' apartment, that Daugherty pulled out a knife and was the first one to stab Mimms, and that Tankersley also stabbed Mimms later in the altercation. *Id.* at 91-93.

At Tankersley's bench trial, Tankersley's November 23, 1993, statement to police was admitted into evidence by stipulation. [31-5] at 168. Tankersley did not testify at his trial. *Id.* at 169. Tankersley was convicted of first-degree murder, attempted first-degree murder, armed robbery, and home invasion. *Id.* at 169-70.

## II. Procedural History

### A. Post-Trial Motion

In his post-trial motion to vacate judgment and finding of guilt, Daugherty, represented by the public defender, argued that the trial court could not properly separate the evidence against each co-defendant during their severed trials. [31-1] at 121. Daugherty argued that the trial court "subconsciously" considered the statements of Daugherty's co-defendants, evidenced by the judge's "unconscious slip that the court 'had reviewed the statements – I mean the arguments of counsel.'" *Id.*

The trial court denied Daugherty's post-trial motion, stating that it "did not take into consideration in any way the statements of Mr. Daugherty or Mr. Tankersley, and the evidence used in Mr. Daugherty's trial was evidence which was

appropriately entered by the state and cross examined and argued against by the defense." [31-6] at 14.

### B. Direct Appeal

On direct appeal, Daugherty argued (1) that the evidence was insufficient to support his convictions; (2) that his right to due process of law was violated by improper arguments from the prosecution; and (3) and that he received ineffective assistance of counsel because defense counsel failed to request Wilson's medical records or request a competency hearing and failed to cross-examine Wilson as to impairments that would prevent her from remembering events. [31-12] at 5, 9, 10. On September 22, 1997, the appellate court, in an unpublished opinion, affirmed Daugherty's convictions. *Id.* at 11.

On December 15, 1997, Daugherty filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court. [31-13]. The Illinois Supreme Court denied the PLA. [31-14], *People v. Daugherty*, 690 N.E.2d 1383 (Ill. 1998).

### C. Post Conviction Petitions

#### i. First Post Conviction Petition (1998)

Daugherty filed his original post-conviction petition on December 2, 1998. [31-15] at 19-60. Daugherty's post-conviction petition raised 13 claims: (1) that he was denied a fair trial because his attorneys failed to raise the sufficiency of Tankersley's statements to police as evidence; (2) that he was denied due process because his attorneys failed to make an adequate number of objections against the testimony of State witnesses; (3) that the trial court judge subconsciously relied on statements not

6

in evidence in *his* case, made by Daugherty's co-defendants, to find him guilty; (4) that the State did not prove him guilty beyond a reasonable doubt because the testifying victim did not place a weapon directly in Daugherty's hands; (5) that he was denied his right of confrontation because his attorneys failed to cross examine some State's witnesses, including Wilson; (6) that his attorneys were ineffective for failing to call a Darrell Benjamin to testify as a witness; (7) that his attorneys were ineffective for failing to obtain Wilson's phone records; (8) that his attorneys were ineffective because they "trample[d] upon his constitutional rights"; (9) that his attorneys were ineffective for failing to include in a motion for a new trial "objections with reasonable specificity"; (10) that his attorneys were ineffective for failing to cross examine some State's witnesses, including Wilson; (11) that his attorneys were ineffective for failing to obtain Wilson's medical records to demonstrate that she was incompetent to testify; (12) that the State withheld favorable evidence because there was no testimony from medical experts regarding Wilson's injuries; and (13) that his attorneys were ineffective for failing to challenge the sufficiency of the finding of probable cause to arrest Daugherty. *Id.* at 28-40.

Daugherty attached an affidavit from Tankersley to his post-conviction petition. *Id.* at 57-58. In his affidavit, Tankersley states that "[o]n or about 11-22-93 I Wayne Tankersley gave an untrue and incorrect statement." *Id.* at 57. Tankersley further states that he was "granted a much lesser sentencing of 35 yrs in return for this statement and I recant my statement to the fullest." *Id.* Daugherty also attached an affidavit from himself to his post-conviction petition. *Id.* at 44. In his affidavit,

7

Daugherty states that he had been wrongfully taking diabetes medication despite not having diabetes and was therefore not capable of functioning normally. *Id.* As a result, he was unable to timely file his post-conviction petition. *Id.*

On January 7, 1999, the Illinois trial court summarily dismissed Daugherty's post-conviction petition as untimely. [31-16] at 4. On December 2, 2002, the Illinois Supreme Court vacated the trial court's dismissal and remanded the case for reconsideration in light of *People v. Boclair*, 202 Ill.2d 89 (Ill. 2002). [31-20], *People v. Daugherty*, 779 N.E.2d 242 (Ill. 2002). On February 5, 2003, the Illinois appellate court remanded Daugherty's first post-conviction petition to the trial court in light of *Boclair*. [31-41] at 69.

ii. **Second Post Conviction Petition (2001) and Procedural Issues**

On April 23, 2001, after his first post-conviction petition was dismissed but before the Illinois Supreme Court vacated the dismissal, Daugherty filed a second post-conviction petition. [31-21] at 8-10. In his second post-conviction petition, Daugherty argued that his extended sentence was based on a determination of heinous and brutal and therefore violated the U.S. Supreme Court's opinion in *Apprendi v. New Jersey*, 560 U.S. 466 (2000). *Id.* On May 25, 2001, the Illinois trial court dismissed Daugherty's second post-conviction petition, finding that because Daugherty was eligible for the death penalty the trial court's consideration of the heinous and brutal nature of the crime was authorized by statute and did not violate *Apprendi. Id.* at 30-33.

8

On May 10, 2002, the Illinois appellate court affirmed the trial court's dismissal of Daugherty's second post-conviction petition. [31-26]. The appellate court found that *Apprendi* does not apply retroactively to cases on collateral review, that *Apprendi* is not implicated if the sentencing court found the defendant eligible for the death penalty, and that a finding by the sentencing court that a murder resulted from brutal or heinous behavior was not violative of *Apprendi*. *Id.* at 2. Daugherty filed a PLA to the Illinois Supreme Court, [31-27], which was denied on October 7, 2003. [31-28], *People v. Daugherty*, 803 N.E.2d 488 (Ill. 2003).

On March 31, 2003, the Illinois trial court heard Daugherty's case based on the appellate court's remand of Daugherty's *first* post-conviction petition. [31-33] at 3-8. However, the trial court misconstrued the appellate court's order and believed that Daugherty's *second* post-conviction petition, concerning his *Apprendi* claim, was before the court. *Id.* at 4. The trial court noted that Daugherty's post-conviction petition based on *Apprendi* had not been dismissed as untimely but had been dismissed as frivolous and without merit. *Id.* Because the trial court was addressing the wrong post-conviction petition, it also wrongly concluded that Daugherty's post-conviction petition had been dismissed on the merits rather than timeliness. Based on its misunderstanding, the trial court reaffirmed its dismissal of Daugherty's *Apprendi* claim. *Id.*

### iii. Third Post Conviction Petition (2006) and OSAD's Efforts to Resolve Procedural Issues

On August 23, 2006, Daugherty filed a third post-conviction petition, seeking to explain the trial court's error in 2003 and leave to file a successive post-conviction

9

petition raising the same claims as his first post-conviction petition. [31-29] at 16-35. On October 13, 2006, the Illinois trial court denied Daugherty leave to file his successive post-conviction petition, holding that Daugherty had failed to meet the cause and prejudice test for permitting successive petitions. *Id.* at 87-92. The trial court also ordered that Daugherty pay filing fees. [31-32] at 34-36. On January 23, 2008, the Office of the State Appellate Defender ("OSAD"), representing Daugherty on appeal, filed a motion with the Illinois trial court explaining the 2003 procedural error and requesting that Daugherty's first post-conviction petition be placed back on the trial court's docket for resolution. [31-41] at 12-14. On February 21, 2008, the Illinois trial court called Daugherty's case. [31-44] at 11-18. Counsel from OSAD did not appear at the February 21, 2008, court call, and the trial court expressed confusion as to what relief the motion was requesting. *Id.* at 16. The State offered to provide the trial court with the appellate record, and the trial court ordered another hearing for March 12, 2008. *Id.* at 16-17. On March 12, 2008, the trial court called Daugherty's case regarding his first post-conviction petition, appointed a public defender to represent Daugherty as to that petition, and set another status hearing for April 11, 2008. *Id.* at 19-21.

In the meantime, on March 24, 2008, OSAD filed an agreed motion for summary disposition with the Illinois appellate court. [31-41] at 5-9. OSAD's motion explained the 2003 procedural error and asked the appellate court to vacate the trial court's October 13, 2006, order which had imposed fees on Daugherty and revoked

good time credit Daugherty had with the Illinois Department of Corrections. *Id.* On April 3, 2008, the Illinois appellate court granted OSAD's motion. [31-39] at 3.

On April 11, 2008, the trial court held a hearing and denied a separate motion Daugherty had filed requesting that the State be compelled to produce biological, trace, and fingerprint evidence and any other evidence which could contain DNA. [31-44] at 22-24. On June 19, 2008, the trial court held another hearing and granted OSAD's agreed motion for summary disposition, vacating its previous October 13, 2006, order which had imposed fees and impacted Daugherty's good time credit. *Id.* at 25-27.

On October 27, 2010, Daugherty filed a motion titled "Pro Se Amendment Motion for Post-Conviction" which sought to amend his first post-conviction petition with several additional claims. [31-39] at 31-39. On December 3, 2010, the trial court denied Daugherty leave to file a successive post-conviction petition. *Id.* at 48-56.

On June 20, 2012, OSAD filed a second agreed motion for summary disposition with the Illinois appellate court, again explaining the 2003 procedural error and requesting that Daugherty's first post-conviction petition be put back on the trial court's docket for second stage post-conviction proceedings. [31-45] at 1-5. On June 28, 2012, the Illinois appellate court granted the agreed motion. [31-46].

### D. First Post Conviction Petition Proceedings (2012-2014)

In August 2012, Daugherty's case came before the trial court again for consideration of his first post-conviction petition. [31-49] at 3. A public defender was appointed to represent Daugherty. *Id.* at 6. On March 22, 2013, Daugherty filed a

motion requesting that his public defender withdraw, and that a bar association attorney be appointed to represent him. [31-47] at 18. On May 9, 2013, the public defender filed an Illinois Supreme Court Rule 651(c) certificate stating that Daugherty's *pro se* petition had adequately set forth his claims and did not require amendment. *Id.* at 34. On June 3, 2013, Daugherty appeared before the trial court regarding his request for a bar association attorney. [31-49] at 27-41. The court denied Daugherty's request for a bar association attorney, and Daugherty then affirmed that he wanted the public defender to continue representing him. *Id.* at 39. On August 5, 2013, Daugherty filed a motion requesting that his public defender withdraw and that he be allowed to proceed *pro se*. [31-47] at 35. At a September 19, 2013, hearing, the trial court questioned Daugherty to ensure he understood the consequences of proceeding *pro se*, Daugherty affirmed that he wished to proceed *pro se*, and the court allowed the public defender to withdraw. [31-49] at 46-59; [31-47] at 139.

At the same September 19, 2013, hearing, Daugherty submitted an amended post-conviction petition. [31-49] at 54-57; [31-47] at 47-138. Daugherty's amended petition presented numerous claims, and attached a new, unnotarized, affidavit by Tankersley from March 2012. [31-47] at 47-74, 103-104. Daugherty's amended petition included multiple claims regarding Tankersley, including that the trial court improperly considered Tankersley's out of court statement, *id.* at 48-50, 52-53, 58-65, 69-70, 72-74; a claim of actual innocence based on Tankersley's affidavits, *id.* at 50; and ineffective assistance of counsel based on a failure to call Tankersley to testify,

*id.* at 51. Daugherty also claimed his counsel was ineffective for failing to move to quash his arrest, *id.* at 51-52; failing to object during the prosecution's examination of witnesses, *id.* at 54; and failing to file for change of venue, *id.* at 71-72. Daugherty additionally claimed *Brady* violations regarding Wilson's medical records, phone records, fingerprint evidence, and DNA evidence, *id.* at 55-58; and that the prosecution made improper and prejudicial comments during closing argument, *id.* at 66-69.

On November 28, 2013, Daugherty filed a supplement to his post-conviction petition adding claims that the trial court improperly amended his indictment, [31-47] at 203-210, that his counsel was ineffective for failing to object in a post-trial motion that the trial court had improperly amended his indictment, *id.* at 211-214, and that the trial court had erred by not granting him a bifurcated death penalty sentencing hearing, *id.* at 215-217. Daugherty also claimed that his counsel was ineffective for failing to call a Darrell Benjamin as a witness, *id.* at 218-219; that his appellate counsel was ineffective for failing to properly argue federal constitutional claims, *id.* at 220-224; that there was insufficient evidence to convict him of first-degree murder, *id.* at 225-233; and that his counsel was ineffective for failing to object to improper argument during the prosecution's closing argument, *id.* at 233-238.

On April 15, 2014, the Illinois trial court heard argument on Daugherty's post-conviction petition and orally denied his claims. [31-49] at 82-146.

On January 5, 2016, on appeal, OSAD filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), concluding that there were no issues of

arguable merit to assert on appeal. [31-50]. On February 10, 2016, Daugherty filed a response to OSAD's *Finley* motion. [31-51]. On May 6, 2016, the Illinois appellate court granted OSAD's *Finley* motion and affirmed the trial court's denial of Daugherty's post-conviction petition. [31-52]. In September 2016, Daugherty filed with the appellate court a document titled "Prayer for Leave for Reconsideration of Appeal." [31-53]. The appellate court construed Daugherty's motion as a petition for rehearing and denied it for lack of appellate jurisdiction. [31-54].

On May 23, 2017, Daugherty filed a PLA with the Illinois Supreme Court, requesting leave to appeal the denial of his post-conviction claims.[1] [136-1]. Daugherty's PLA requested leave to present four claims on appeal: (1) that his trial counsel was ineffective for failing to properly advise him about the death penalty sentencing phase of trial; (2) that the prosecution withheld favorable evidence including Wilson's medical records, Wilson's telephone records, and DNA evidence; (3) that his post-conviction counsel, the public defender, was ineffective; and (4) that the trial court improperly sentenced him to an extended sentence relying on a determination of brutal and heinous. *Id.* at 7-19.

The Illinois Supreme Court denied Daugherty's PLA on September 27, 2017. [136-2], *People v. Daugherty*, 89 N.E.3d 758 (Ill. 2017).

---

[1] Respondent did not include Daugherty's PLA in its filing of the state court record, *see e.g.*, [31] [125], and asserts that Daugherty never filed a post-conviction PLA. [32] at 18. The Court notes that Daugherty filed his PLA *after* filing his habeas petition and after Respondent filed the initial state court record and answer to the habeas petition, [31] [32], which may have contributed to this oversight. To ensure the record is complete, the Court has filed Daugherty's post-conviction PLA and the Illinois Supreme Court's denial of the PLA at Docket [136-1] and [136-2].

### E. Daugherty's § 2254 Petition

Daugherty filed the instant habeas petition on September 12, 2016. [1].

Daugherty asserts 13 claims:

1. The prosecution withheld favorable evidence including (1) Wilson's phone records; (2) Wilson's medical records; (3) fingerprint evidence; and (4) DNA evidence from blood and hair trace evidence. [1] at 14, 21.

2. His trial counsel was ineffective for failing to file a pretrial motion to quash his arrest and to suppress evidence. *Id.* at 14.

3. His trial counsel was ineffective for failing to include their objections with reasonable specificity in a post-trial motion. *Id.* at 15, 21.

4. His trial counsel was ineffective for failing to subpoena a Darrell Benjamin to testify. *Id.* at 15, 21.

5. His trial counsel was ineffective for failing to properly advise him about the death penalty sentencing phase of trial. *Id.* at 16, 22.

6. His trial counsel was ineffective for failing to object when the trial judge added the element of accountability to the grand jury indictment. *Id.* at 16, 22-23.

7. The trial court applied the wrong sentencing statute. *Id.* at 17, 23.

8. The prosecution's closing argument included improper and prejudicial statements. *Id.* at 17, 23.

9. The trial court violated Daugherty's rights under the confrontation clause by considering Tankersley's out-of-court statement even though the trials had been severed. *Id.* at 18, 24.

10. His trial counsel was ineffective for failing to request medical records that would have shown that Wilson was incompetent to testify. *Id.* at 18, 24-25.

11. His trial counsel was ineffective for failing to request medical records showing whether Wilson had been shot. *Id.* at 19, 25-26.

12. The prosecution failed to prove Daugherty guilty of first-degree murder beyond a reasonable doubt. *Id.* at 19, 26.

13.     Tankersley made a false statement in exchange for a promise of leniency. *Id.* at 20, 26.

Respondent answered Daugherty's petition on May 16, 2017, [32], and Daugherty filed a reply in support of his petition and request for certificate of appealability on September 4, 2018. [70]. On December 27, 2019, Daugherty filed a motion to stay the instant proceedings pending resolution of motions he had filed in Illinois state court seeking DNA, ballistic, and fingerprint evidence. [89]. Respondent did not object, [91], and the Court granted Daugherty's motion to stay. [92].

Following resolution of his state court motions regarding biological evidence, Daugherty filed his supplemental habeas petition on March 12, 2024. [119]. In support of his *Brady* claims, Daugherty asserts that the State withheld favorable evidence and destroyed evidence in violation of state law. *Id.* at 2-3. Daugherty also asserts that Wilson committed perjury when she testified at trial that she had identified Daugherty from a photo array and that she had called 911. *Id.* at 3-4.

## **LEGAL STANDARD**

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v.*

*Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks omitted). To properly exhaust a claim, a petitioner must fully and fairly present federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

If a petitioner has failed to properly assert his federal constitutional claims at each level of state review, then his claims are procedurally defaulted. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). If a habeas petitioner overcomes procedural default, only then can a federal court assess the merits of his federal habeas claims.

A federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d); see also *Burt v. Titlow*, 571 U.S. 12, 18-19 (2013). This is a "highly deferential standard for reviewing claims of legal error by the state courts." *Id.*

## DISCUSSION

For the following reasons, Claims 2, 3, 4, 5, 6, 7, 9, and 13 are denied as procedurally defaulted. Claims 1 (Brady Violation), 8 (Improper Prosecutor

Comments), 10 and 11 (Ineffective Assistance of Counsel), and 12 (Insufficiency of the Evidence) are denied on the merits.

## I.     Procedural Default

To preserve a claim for federal habeas review and allow a reviewing federal court to evaluate the claim on the merits, "a state prisoner must fairly present the operative facts and legal principles controlling the claim through a full round of state court review." *Rogers v. Wells*, 96 F.4th 1006, 1013 (7th Cir. 2024); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Daugherty failed to properly exhaust Claims 2, 4, 6, 9, and 13 because he failed to raise them in his PLA to the Illinois Supreme Court. Daugherty failed to properly exhaust Claims 3, 5, and 7 because he failed to appropriately raise them before the Illinois state courts and they have never been decided on the merits. Daugherty also failed to exhaust his claim that Wilson perjured herself, which he raised for the first time in his supplemental habeas petition.

### A. Claims Never Raised in PLA of Post Conviction Petition (Claims 2, 4, 6, 9, and 13)

Daugherty's habeas petition argues: that his trial counsel was ineffective for failing to file a pretrial motion to quash his arrest and to suppress evidence, [1] at 14 (Claim 2); that his trial counsel was ineffective for failing to subpoena a Darrell Benjamin to testify, *id.* at 15, 21 (Claim 4); that his trial counsel was ineffective for failing to object when the trial judge added the element of accountability to the grand

18

jury indictment, *id.* at 16, 22-23 (Claim 6); that the trial court violated Daugherty's rights under the confrontation clause by considering Tankersley's out-of-court statement even though the trials had been severed, *id.* at 18, 24 (Claim 9); and that his co-defendant Tankersley made a false statement in exchange for a promise of leniency, *id.* at 20, 26 (Claim 13).

Claims 2, 4, 6, 9, and 13 were each arguably presented in Daugherty's amended and supplemental state post-conviction petitions. *See e.g.*, [31-47] at 48-51 (Claims 9 and 13), 52-53 (Claim 2), 211-214 (Claim 6), 218-219 (Claim 4). However, Daugherty failed to include these claims in his 2017 PLA seeking leave to appeal the dismissal of his amended and supplemental post-conviction petitions. *See* [136-1]. Daugherty did not present these constitutional claims through one full round of state court review. *Rogers*, 96 F.4th at 1013. Therefore, these Claims are procedurally defaulted.

### B. Claims Never Reviewed on the Merits (Claims 3, 5, and 7)

#### i. Claim 3

Daugherty's habeas petition argues that his trial counsel was ineffective for failing to object with reasonable specificity in a post-trial motion. [1] at 15, 21. Daugherty included this claim in his original post-conviction petition filed in 1998. [31-15] at 36. However, Daugherty excluded this claim from his subsequent amended and supplemental post-conviction petitions. *See e.g.*, [31-47] at 47-138, 197-241. The Illinois trial court therefore never considered Claim 3 on the merits. *See e.g.*, [31-49] at 82-146. Additionally, even if Daugherty had properly presented this claim before the Illinois trial court, Daugherty also failed to include this claim in his PLA to the

Illinois Supreme Court. *See* [136-1]. Daugherty did not present Claim 3 through one full round of state court review. *See Rogers*, 96 F.4th at 1013. Therefore, Claim 3 is procedurally defaulted.

### ii. Claims 5 and 7

Daugherty's habeas petition argues that his trial counsel was ineffective for failing to properly advise him about the death penalty sentencing phase of trial, [1] at 16, 22 (Claim 5); and that the trial court applied the wrong sentencing statute, *id.* at 17, 23 (Claim 7).

Daugherty did not raise either claim in his amended or supplemental post-conviction petitions before the state court. *See e.g.*, [31-47] at 47-138, 197-241. Daugherty did not present Claim 5 or Claim 7 through one full round of state court review. *See Rogers*, 96 F.4th at 1013. Therefore, Claims 5 and 7 are procedurally defaulted.

### iii. Claim that Wilson Committed Perjury

Daugherty asserts in his supplemental habeas petition that Wilson committed perjury when testifying at trial. [119] at 3-4. First, the Court granted leave for Daugherty to supplement his habeas petition in consideration of the DNA testing allowed by the state court. [115]. Daugherty's perjury claim, raised for the first time in his habeas petition, is beyond the scope of the supplemental briefing allowed by the Court. Regardless, Daugherty failed to raise his perjury claim in either his direct appeal PLA or his post-conviction PLA to the Illinois Supreme Court. *See* [31-13]; [136-1]. Daugherty did not present his perjury claim through one full round of state

court review. *See Rogers*, 96 F.4th at 1013. Therefore, his perjury claim is procedurally defaulted.

### C. Exceptions to Procedural Default

There are two exceptions to procedural default that may allow a reviewing federal court to consider the merits of an otherwise defaulted claim. A habeas petitioner may demonstrate (1) cause and prejudice, or (2) a miscarriage of justice. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). To establish cause, a petitioner "ordinarily must show that some external impediment blocked him from asserting his federal claim in state court." *Id.* at 415-15 (citing *Murray v. Carrier*, 477 U.S. 478 (1986)). And to establish prejudice, a petitioner must show that errors at trial created not just the possibility of prejudice, but actual and substantial disadvantage. *Id.* at 515 (citing United States v. Frady, 456 U.S. 152, 170 (1982)). To establish miscarriage of justice, a petitioner "must demonstrate that he is actually innocent of the crime for which he was convicted." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995).

Daugherty's habeas petition before this court does not offer any excuse for his failures to exhaust. The Court recognizes that Daugherty's state post-conviction petition suffered from years of delay due to the trial court's error, and that Daugherty brings his habeas petition *pro se*. Nevertheless, Daugherty was afforded the opportunity to amend and supplement his state post-conviction petition. There was no external impediment preventing him from including his defaulted claims in his amended or supplemental post-conviction petition or his subsequent PLA to the Illinois Supreme Court. Daugherty also does not clearly articulate a claim of actual

innocence in his habeas petition. Even if his claims regarding Tankersley's affidavit could arguably be read as a claim of actual innocence, he has not established that no reasonable trier of fact would have found him guilty.

Therefore, the Court denies Claims 2, 3, 4, 5, 6, 7, 9, and 13, as well as the belated claim related to Wilson's alleged perjury.

## II.     Merits

The Court finds that Daugherty properly exhausted Claims 1, 8, 10, 11, and 12 by presenting them to each level of the Illinois state courts, therefore this Court may consider whether he is entitled to federal habeas relief on the merits.

### A. Insufficiency of the Evidence (Claim 12)

Daugherty's habeas petition argues that the prosecution failed to prove him guilty of first-degree murder beyond a reasonable doubt. [1] at 19, 26. Daugherty properly exhausted his insufficiency of the evidence claim by presenting it on direct appeal, [31-12] at 5, and in his PLA to the Illinois Supreme Court. [31-13] at 18-20, 25-26.

On the merits, the Illinois appellate court analyzed Daugherty's insufficient evidence claim under the framework articulated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). [31-12] at 5. The appellate court asked whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [31-12] at 5 (citing *Jackson*, 443 U.S. at 319).

A federal court reviewing an insufficiency of the evidence claim does not ask whether it believes the state court's determination was incorrect, but rather asks whether the state court's "determination was unreasonable—a substantially higher threshold." *Anderson v. Brookhart*, 19 F.4th 980, 982 (7th Cir. 2021) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). The reviewing federal court defers to the specific reasons given by the state court if they are reasonable. *Id.* (quoting *Wilson v. Sellers*, 584 U.S. 122, 125 (2018)). "Another layer of deference is inherent" from *Jackson v. Virginia*, therefore, a reviewing federal court must "presume that the trier of fact resolved any conflicting inferences in the prosecution's favor and to 'defer to that resolution.'" *Id.* at 982-83 (quoting *Jackson*, 443 U.S. at 326)).

In Daugherty's case, the Illinois appellate court's decision rejecting Daugherty's insufficiency of the evidence claim was reasonable. On direct appeal, Daugherty argued that Wilson did not observe anyone shoot or stab Mimms and the prosecution never produced a gun or knife to link Daugherty to the murder. [31-12] at 5-6. The appellate court reasoned that circumstantial evidence alone may be sufficient to sustain a conviction. *Id.* at 6. The appellate court noted that Wilson testified at trial that she observed Daugherty and his co-defendants arrive at the apartment and later observed Daugherty striking Mimms with a closed fist during the fight, that police found Mimms' body in the apartment an hour and a half later, and that Mimms' death was attributed to multiple stab wounds. *Id.* at 6-7. Given the brief time frame, Wilson's recollection of events, and the location of Mimms' body, the

23

appellate court held that the trier of fact reasonably inferred that Daugherty stabbed Mimms to death. *Id.* at 7.

The Court finds that the Illinois appellate court's conclusion was reasonable. *Anderson*, 19 F.4th at 982. The appellate court reasonably applied *Jackson* by pointing to the trial evidence supporting the inference that Daugherty stabbed Mimms to death and finding that a rational trier of fact could have relied on that circumstantial evidence to make that inference. Therefore, the Court denies Claim 12.

### B. Prejudicial Prosecutor Comments (Claim 8)

Daugherty's habeas petition argues that the prosecution's closing argument included improper and prejudicial statements. [1] at 17, 23. Daugherty properly exhausted this claim by presenting it on direct appeal, [31-12] at 9-10, and in his PLA to the Illinois Supreme Court. [31-13] at 25-26.

The Illinois appellate court considered Daugherty's arguments that the prosecution improperly argued that Daugherty stabbed Mimms, that Daugherty aided Steven in shooting Wilson, that all three co-defendants had weapons and fled together, and that the discovery of Wilson's purse corroborated that the three co-defendants worked together. [31-12] at 9-10. The Illinois appellate court reasoned that all the comments were inferable from the evidence and therefore allowable in closing arguments. *Id.* at 9. Further, because Daugherty received a bench trial, the appellate court presumed that the trial court considered only competent evidence and proper argument in reaching its decision. *Id.*

In reviewing a due process challenge to a prosecutor's statements during closing argument, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *U.S. v. Olson*, 450 F.3d 655, 673-74 (7th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

The Court finds that the Illinois appellate court's conclusion was a reasonable application of the law. § 2254(d); *Anderson*, 19 F.4th at 982. The appellate court reasonably found that the prosecution's comments during closing argument were inferable from the evidence presented in the case. As the appellate court recognized, the comments were made during a bench trial and not to a jury, therefore no prejudice was likely to occur. *See U.S. v. Stinefast*, 724 F.3d 925, 931 (7th Cir. 2013) ("Judges often hear improper argument and other forms of inadmissible evidence that they are presumed to disregard when deciding matters of importance."). Therefore, the Court denies Claim 8.

## C. Ineffective Assistance of Counsel (Claims 10 and 11)

Daugherty's habeas petition argues that his trial counsel was ineffective for failing to obtain Wilson's medical records to show that Wilson was incompetent to testify, [1] at 18, 24-25 (Claim 10), and to challenge whether Wilson had been shot, [1] at 19, 25-26 (Claim 11). Daugherty properly exhausted this claim by presenting it on direct appeal, [31-12] at 10-11, and in his PLA to the Illinois Supreme Court. [31-13] at 17-18.

On the merits, the Illinois appellate court analyzed Daugherty's ineffective assistance of counsel claim under the framework articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). [31-12] at 10-11. Under *Strickland*, Daugherty must both (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness; and (2) show a reasonable probability that, but for counsel's objectively unreasonable errors, the result of his proceeding would have been different. *Lee v. Galloway*, 106 F.4th 668, 673 (7th Cir. 2024) (quoting *Strickland*, 466 U.S. at 668, 694). "[T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689). Habeas review is "doubly deferential" of counsel's performance under *Strickland*. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

The appellate court rejected Daugherty's claims on the basis that he could not establish prejudice. [31-12] at 10-11. The Court finds that the Illinois appellate court reasonably applied *Strickland*. Wilson testified at length in the trial and demonstrated her ability to recall the events of the crime and the extent of her injuries. Daugherty has provided no evidence or basis to show that obtaining Wilson's medical records would have led to successfully establishing that she was incompetent to testify or that she had not actually been shot. Therefore, the Court denies Claims 10 and 11.

### D. Brady Violation (Claim 1)

Daugherty's habeas petition argues that the prosecution withheld favorable evidence at trial including (1) Wilson's phone records; (2) Wilson's medical records; (3) fingerprint evidence; and (4) DNA evidence from blood and hair trace evidence. [1] at 14, 21. Daugherty properly exhausted his *Brady* violation claim by presenting it in his state post-conviction petition, [31-47] at 55-58, in OSAD's *Finley* motion before the state appellate court, [31-50] at 26-27, and in his PLA to the Illinois Supreme Court. [136-1].

To succeed on his *Brady* claim, Daugherty must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *U.S. v. Silva*, 71 F.3d 667, 670 (7th Cir. 1995).

As the Illinois trial court observed with regard to Wilson's medical records, [31-49] at 126-127, Daugherty did not present any of the documentary evidence he claimed the prosecution suppressed, therefore he could not establish that the evidence was favorable to his defense. *See U.S. v. Shields*, 789 F.3d 733, 747 (7th Cir. 2015) ("[T]he defendant bears the burden of establishing a *Brady* violation by offering more than mere speculation or unsupported assertions that the Government suppressed evidence."). Here, Daugherty's claims regarding Wilson's medical records, Wilson's phone records, and fingerprint evidence suffer the same fatal flaw. Daugherty fails to offer anything more than speculation that those pieces of evidence may be favorable to him.

With regard to DNA evidence, Daugherty now asserts that the prosecution improperly destroyed certain DNA evidence in violation of state law. [119] at 2-3. First, as Respondent points out, the Illinois statutory duty to preserve evidence did not become effective until 2001, years after Daugherty's trial and the alleged destruction of evidence. [124] at 3. Second, Respondent asserts that Daugherty's purported evidence shows only that the container holding the DNA evidence (i.e., a glass vial or envelope) was destroyed, not the DNA evidence itself. *Id.* at 4. This is supported by the fact that DNA evidence was found in the State's custody in 2022 and subsequently tested. *See* [125-2]; [125-5]; [125-6]; [125-7]; [125-8].

Regardless of Daugherty's claims that the prosecution destroyed evidence, Daugherty now has the results of DNA testing but still fails to articulate how any of the DNA evidence is favorable to his case. *See* [119] at 2-3. Daugherty asserts that the allegedly withheld and destroyed evidence "is favorable to accused because it is exculpatory or impeaching." *Id.* at 3. However, Daugherty fails to specifically show how any of the DNA testing results are favorable to his defense.

Even with DNA testing results now in hand, Daugherty fails to establish that any of the alleged evidence is favorable to him. Therefore, Claim 1 is denied.

## CONCLUSION

For the foregoing reasons, the Court denies Daugherty's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability.

E N T E R :

Dated: January 21, 2025

_____
MARY M. ROWLAND
United States District Judge